# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of: )
)
Target Phones more fully described in Attachment A )
) Case No. 19-844M (NJ)
)
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:
18 U.S.C. § 1951 (Hobbs Act), 18 U.S.C. § 924(c) (Brandishing a Firearm During a Crime of Violence), 18 U.S.C. 844(i) and 18 U.S.C. § 922(g)(1) and 924(a)(2).
The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Matthew Gibson, Federal Task Force Officer
*Printed Name and Title*

Sworn to before me and signed in my presence:
Date: May 1, 2019

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin

Nancy Joseph, U.S. Magistrate Judge
*Printed Name and Title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Matthew Gibson, being first duly sworn on oath, on information and belief state:

## I. INTRODUCTION, BACKGROUND, TRAINING, AND EXPERIENCE:

1. I make this affidavit in support of an application for a search warrant of two cellular telephones seized during the execution of a search warrant related to the armed robbery of the Metro PCS Store, 4055 North Teutonia Avenue, Milwaukee, WI on April 15, 2019.

2. I have over 27 years of experience as a law enforcement officer and am currently assigned to the Milwaukee FBI Violent Crime Task Force as a Deputized Federal Task Force Officer. I was a Special Agent with the Federal Bureau of Investigation for over 23 years and have been an Investigator with the Milwaukee County District Attorney's Office since 2015. I have participated in numerous complex narcotics, money laundering, violent crime, armed bank robbery, and armed commercial robbery investigations related to violations of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 924(c), 1951, 1956, 1957, 2113, 2119, and other related offenses. I have employed a wide variety of investigative techniques in these and other investigations, including but not limited to, the use of informants, wiretaps, cooperating defendants, recorded communications, search warrants, surveillance, interrogations, public records, DNA collection, and traffic stops. I have also received formal training regarding the same. As a Federal Task Force Officer, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3. Based on the facts set forth in this affidavit, there is probable cause to search the information described in Attachment A for evidence of a violation of 18 U.S.C. § 1951 (Hobbs

Act), 18 U.S.C. § 924(c) (Brandishing a Firearm During a Crime of Violence), 18 U.S.C. 844(i) and 18 U.S.C. § 922(g)(1) and 924(a)(2).

4. This affidavit is based upon my training and experience, my personal knowledge and information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon police reports, surveillance videos, physical surveillance, and witness statements that I consider to be reliable as set forth herein.

5. Because this affidavit is submitted for the limited purpose of a obtaining a search warrant, I have not included each and every fact known to me concerning this investigation.

## II. PROBABLE CAUSE

6. On April 15, 2019, at approximately 18:17, an unidentified male subject committed the armed robbery of the Metro PCS, 4055 North Teutonia Avenue, Milwaukee, WI. Witness and surveillance video indicated that the subject walked into the business and engaged the victim employee in conversation concerning cellular phones. The subject then displayed a handgun and demanded that the employee open the register. The employee opened the register and backed away. The subject removed the cash from the register and fled. The subject was described as a black male, 25 to 26 years of age, 6'0" to 6'2" tall, thin build, with a dark complexion and a goatee, wearing a black hooded sweatshirt, dark pants, and athletic style shoes.

7. Following a media a release, a citizen source identified the subject as Edward Burgess. The source had detailed information regarding Burgess and identified Burgess' phone number as 414-252-8066. Burgess matched the physical description of the subject. Law enforcement subsequently compared a booking photo of Edward Burgess (DOB X/XX/1992) to the video surveillance of the Metro PCS robbery, and determined that Burgess was the subject

2

depicted in the video. Burgess had an active felon warrant for his arrest related to an arson investigation.

8. On April 18, 2019, investigation identified T.H. as being associated with Burgess. T.H. had a black 2006 Chrysler Town and Country van. Surveillance located a vehicle matching that description parked in the driveway of T.H.'s residence, 3602 North Vel Phillips Avenue, Milwaukee, WI. The vehicle did not have any license plates.

9. On April 19, 2019, investigation identified a family member of Burgess who resided at 3825 West Marion Street, Milwaukee, WI. Surveillance observed Burgess at that residence and arrested him inside pursuant to his active warrant. T.H. was inside the residence and was interviewed on scene. T.H.'s black Chrysler van, without license plates, was parked near the garage. T.H. stated that Burgess had taken his firearm to another room when he saw the police outside. T.H. stated that Burgess had clothing inside her black Chrysler van. A Wisconsin State search warrant was obtained for the residence and T.H.'s van. T.H. identified Burgess' silver iPhone on the couch and other items belonging to Burgess.

10. Law enforcement searched the residence pursuant to the warrant. Recovered during the search was a loaded 7.65 caliber Beretta semi-automatic handgun, Serial # 04131, in a bedroom, a silver iPhone on the couch, and a broken black LG phone on the kitchen floor a short distance away from the mattress Burgess and T.H. had slept. The battery and rear cover of the LG phone were separated from the handset which had a broken screen. In my training and experience subjects attempt to break their cellular telephones in an attempt to keep law enforcement from collecting the data the phone may have stored in its memory.

11. During a search of the van, law enforcement recovered clothing and a pair of shoes which were consistent with the items worn by the subject in the Metro PCS armed robbery on

3

April 15, 2019. The silver iPhone and black LG phone were placed on Milwaukee Police Department Inventory 19012743, items 7 and 8 respectively.

12. On April 20, 2019, Burgess was interviewed at the Milwaukee Police Department. Burgess was read his constitutional rights, which he stated he understood and waived in order to speak with detectives. The interview was recorded with audio and video. Burgess admitted he had committed the armed robbery of the Metro PCS on April 15, 2019.

13. On April 22, 2019, a line-up was conducted at the Milwaukee Police Department. The victim employee positively identified Burgess as the subject who committed the armed robbery of the Metro PCS on April 15, 2019. The victim also identified a photograph of the firearm seized during the search warrant as the weapon the subject displayed during the armed robbery.

14. At the time of his arrest on April 19, 2019, Burgess had an active warrant for his arrest related to an arson investigation. That warrant was the result of events that occurred on December 7, 2018.

15. On December 7, 2018, at approximately 13:30, Burgess punched T.H. in the face and pointed a gun at her while she held their infant son. Burgess left the residence and T.H. filed a domestic violence report. Throughout the remainder of the day, Burgess sent T.H. threatening messages. At approximately 20:30, Burgess sent T.H. a text message in which he stated: "I burning rhat bitch down and I dont carr what happens next." At 20:23, Burgess sent T.H. a message in which he stated "Ima kill you im not playing." At 20:45, Burgess texted T.H.: "Less than 30 min." At 20:48, Burgess texted T.H.: "OK hoe bye" and "25 min less."

16. Approximately 20 minutes after Burgess' last text message to T.H. in which he wrote "25 min less," the Milwaukee Police Department responded to a fire at T.H.'s residence.

17. When agents with the Bureau of Alcohol, Tobacco, and Firearms conducted a review of the fire scene, they found a rifle. T.H. told law enforcement officers that the rifle belonged to Burgess and that Burgess also always carried a black semi-automatic handgun on his person. Burgess has a prior felony conviction that prohibits him from possessing firearms.

18. On December 20, 2018, Burgess was charged by Criminal Complaint in Milwaukee County Circuit Court, case number 2018CF5976 with Battery in violation of Wis. Stat. § 940.19(1) with modifiers of Habitual Criminality Repeater and Domestic Abuse Assessments in violation of Wis. Stat. §§ 939.62(1)(a) and 973.055(1), Disorderly Conduct in violation of Wis. Stat. § 947.01(1) with modifiers of Habitual Criminality Repeater, Domestic Abuse Assessments and Use of a Dangerous Weapon in violation of Wis. Stat. §§ 939.62(1)(a), 973.055(1), 939.63(1)(a) and Arson of a Building w/o Owner's Consent in violation of Wis. Stat. § 943.02(1)(a) with modifiers of Habitual Criminality Repeater and Domestic Abuse Assessments in violation of Wis. Stat. §§ 939.62(1)(a) and 973.055(1) and a warrant issued for his arrest.

19. On February 27, 2019, Burgess was charged by Indictment in United States District Court for the Eastern District of Wisconsin with Arson in violation of Title 18 United States Code § 844(i) and Possession of a Firearm by a Felon in violation of Title 18 United States Code §§ 922(g)(1) and 924(a)(2) and a warrant issued for his arrest.

20. Based on my training and experience I know that robbery suspects often use mobile cellular devices as tools in furtherance of their robbery conspiracies and that mobile cellular devices frequently contain evidence of their crimes. For example, robbery suspects often use cellular phones to communicate with accomplices who are lookouts or getaway drivers or to conduct pre-robbery surveillance. The phones often contain: the phone numbers of these

accomplices; text messages related to the crime; photographs of robbery proceeds; photographs related to the crime; internet sites used by the subjects to communicate or web searches related to crimes and other saved data related to crimes.

## TECHNICAL TERMS

21. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the wireless telephone.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed

6

and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address

7

so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

22. Based on my training, experience, and research, I know that the Target Phones have capabilities that allow them to serve as a wireless telephone, digital camera, and GPS navigation device. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the Target Phones and how they were used.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the Target Phones. This information can sometimes be recovered with forensics tools.

24. There is probable cause to believe that things that were once stored on the Target Phones may still be stored there, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been

8

downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

25. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence

9

of the crimes described on the warrant, but also forensic evidence that establishes how the Target Phones were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Target Phones because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

   b. Forensic evidence on a device can also indicate who has used or controlled the Target Electronics. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

10

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Target Electronics consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Target Electronics to human inspection in order to determine whether it is evidence described by the warrant.

27. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## III. CONCLUSION

28. Based on the forgoing, it is probable that Edward B. Burgess committed the armed robbery of the Metro PCS, 4055 North Teutonia Avenue, Milwaukee, WI on April 15, 2019, and that the two cellular telephones seized from 3825 West Marion Street, Milwaukee, WI, may contain evidence of that crime, and Burgess' prior crimes of arson and possession of a firearm by a felon. Both phones are currently in evidence at the Milwaukee Police Department under Inventory 19012743, Item 7, the sliver iPhone, and Item 8, the broken black LG phone.

## ATTACHMENT A

The **Target Phones** to be searched are listed below, along with the locations in which they were found:

1) A silver iPhone, found on the couch during the search warrant, and currently in Milwaukee Police Department Inventory 19012743, item 7.

2) A broken black LG phone, found on the kitchen floor during the search warrant, and currently in Milwaukee Police Department Inventory 19012743, item 8.

13

# ATTACHMENT B

All records relating to violations of 18 U.S.C. §1951(a), §924(c), 844(i), 922(g), and 924(a)(1), from December 7, 2018 to April 15, 2019, including:

1. Records of travel and GPS locations, including but not limited to data stored in applications used to make travel arrangements;

2. Any documentation related to firearms, including information and documents regarding the purchase, sale, and possession of firearms;

3. Financial records, or records of any financial transactions, reflecting proceeds from the illegal conduct described herein;

4. Contact lists, passwords, address books, photographs, videotapes, letters, cables, telegrams, facsimiles, personal notes, documents and other items or lists reflecting names, addresses, telephone numbers, addresses and communications regarding illegal activities;

5. Stored telephone numbers, recently called numbers list, text messages, digital audio and / or video recordings, pictures, settings, and any other user defined settings and/or data;

6. Digital evidence such as photographs, videos, or communications regarding the illegal conduct described herein;

7. Communications, in any form, regarding the illegal activities described herein.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

14